IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN DOE TM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-02156 |
| | ) | |
| THE UNITED STATES OF | ) | |
| AMERICA, and | ) | |
| | ) | |
| MARK E. WISNER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff John Doe TM, by and through his counsel of record, Dan Curry and Sarah Brown, and for his causes of action against the Defendants, hereby states as follows:

1.      Plaintiff's causes of action arise under the Federal Tort Claims Act of 1948, 28 U.S.C. §§1346(b), 2671 *et seq.*, and 38 U.S.C. §7316(a), (f), and Kansas common law.

2.      Jurisdiction rests with this Court pursuant to 28 U.S.C. § 1346(b). The Court additionally has supplemental jurisdiction over Plaintiff's claims against Defendant Wisner pursuant to 28 U.S.C. § 1367(a), as Plaintiff's claims against Defendant Wisner arise out of the same case and controversy as Plaintiff's claims against Defendant United States of America.

3.      Pursuant to 28 U.S.C. § 1391(e), venue is proper in the Judicial District where a substantial number of the events involved occurred or where the

plaintiff resides, if there is no real property at issue. The negligent acts described herein took place in Leavenworth, Kansas; the plaintiff is a Kansas resident; there is no real property at issue. Venue is proper in the District Court of Kansas.

4.     Plaintiff's claims arose from negligent acts or omissions that occurred at the Leavenworth VA medical clinic.

5.     On or about February 7, 2018, Plaintiff submitted an administrative claim Form-95 to the Department of Veterans Affairs ("Agency"). On March 14, 2018, the Department of Veterans Affairs sent Plaintiff notice denying his claims. Plaintiff has therefore exhausted administrative remedies.

6.     Mark E. Wisner currently resides in Kansas. At all times relevant to this lawsuit, he was an employee, agent and/or servant of the Agency operating in the course and scope of his employment and agency, and licensed to practice as a physician assistant, while holding himself out to the public as a medical doctor.

7.     At the time of the acts complained of herein, Defendant Wisner was the agent, actual or apparent, of the Defendant United States of America, was acting in the scope and course of his employment, and was acting in the context of providing VA medical services; as such, all acts of Defendant Wisner are imputed to his employer/principal, Defendant United States of America.

8.     Plaintiff is a United States veteran.

## Background Allegations

9.     Defendant Wisner had been arrested in 1987 in San Bernardino, California for "Disorderly Conduct: Solicit Lewd Act."

10.     In 1999, a Kansas nurse reported Defendant Wisner to the Kansas Board of Healing Arts for inappropriate, sexualized conduct with a patient and mis-prescription of medications.

11.     Twice in 2011, Leavenworth VA Medical Center patients questioned Defendant Wisner's inappropriate conduct, including the frequency of genital exams and the lack of hand-washing, to a VA Medical Center case-manager, and in both cases the case-manager failed to act and instead told the patients they had no reason to be concerned.

12.     In 2012, a VA Leavenworth VA Medical Center patient reported Defendant Wisner's inappropriate conduct to the VA's patient advocate office.

13.     In 2012, VA police, the VA OIG, and VA medical staff knew that a patient had complained about Wisner's genitalia exam and conduct and had threatened to kill Wisner over it.

14.     Numerous other patients reported questionable conduct by Wisner in 2013 and 2014.

15.     On August 30, 2017, Wisner was convicted of criminal charges stemming from improper and unnecessary genital examinations of patients over several years before he resigned and had his license to practice medicine revoked in 2015.

16.     Plaintiff saw Defendant Wisner at the Leavenworth VAMC clinic on numerous occasions from 2010 to 2014, including at least one visit after February 8, 2014.

17.     Defendant Wisner immediately won the absolute trust and confidence of Plaintiff by sharing with Plaintiff their common military past.

18.     During the examinations, Defendant Wisner inquired about Plaintiff's sexual performance and engaged in unnecessary and improper physical exams, including genitalia exams without using a glove.

19.     Plaintiff was not aware of any substandard quality in Wisner's medical care until 2017.

20.     Defendant Wisner admitted to a federal investigator that his conduct occurred during routine physical exams and for valid medical purposes, although he conceded he would be overly thorough with the genitalia exams.

21.     Throughout Mr. Wisner's tenure working as a physician assistant for the VA, the VA should have had a physician closely supervising Mr. Wisner's treatment of patients.

22.     Wisner's supervising physician at the VA medical center failed to appropriately supervise Mr. Wisner.

23.     Wisner's supervising physician admitted that he and his own supervisors failed to follow mandatory VA regulations regarding Wisner's supervision.

24.     Throughout Wisner's tenure at the VA, numerous VA patient files maintained by Defendant Wisner contained open and obvious mis-prescription and over-prescription of medications to veterans that his supervising physicians knew or should have known indicated that he was providing negligent care to veterans.

25.     Defendants knew or should have known that Defendant Wisner had victimized other veterans at the Leavenworth and Topeka VA medical centers; that he was a danger to his patients; that he was an impaired practitioner; that he had propensities and a history of providing improper medical care and/or had propensities and a history of violating patient boundaries.

26.     Defendants failed to monitor Defendant Wisner's clinical activities to keep them within the authorized scope of practice and medically appropriate as required pursuant to VHA Directive 1063, VHA Handbook 1100.19, VHA Directive 2012-030, VHA Directive 2004-029, VHA Directive 2012-026, 2010 Health System Policy Memorandum, as well as the state physician assistant licensure act, K.S.A. § 65-2801, et seq.

27.     Defendants failed to monitor Defendant Wisner's clinical activities to ensure the presence of ongoing competency and medical appropriateness.

28.     Defendants failed to take appropriate action to correct and/or stop his inappropriate conduct, including but not limited to removing Defendant Wisner from patient care, instructing him to only conduct necessary medical exam and questioning, reporting him to police, withdrawing his privileges, subjecting him to random checks, requiring the use of chaperones, asking him if he was conducting unnecessary medical procedures, or firing him and reporting him to the Kansas Board of Healing Arts.

29.     Defendant Wisner's scope of employment included prostate and genital exams, taking medical histories, inquiring about family status and sexual history,

and prescribing medicine, all as part of his general authority to perform physical exams of veterans.

30.     VHA Handbook 1100.19 applies to credentialing physician assistants at VA medical centers, and that it requires the VA to conduct credentialing checks prior to a new hire, reappointment or transfer, specifies that the service chief is responsible for "[r]eviewing all credentials … and for making recommendations regarding appointment and privileging action; documenting these recommendations in VetPro; and … [m]onitoring and surveillance of the professional competency and performance of those who provide patient care services…. This includes both the focused professional practice evaluation for new privileges (practitioners new to the facility as well as practitioners requesting new privileges) and the ongoing monitoring and continued surveillance over time."

31.     VHA Handbook 1100.19 further states: "The credentialing process includes verification, through the appropriate primary sources, of the individual's professional education; training; licensure; certification and review of health status; previous experience; professional references; malpractice history and adverse actions; or criminal violations, as appropriate." The credentialing process also includes screening through the appropriate State Licensing Board.

32.     VHA Handbook 1100.19 further states: "(1) Each privileged health care practitioner must have a Credentialing and Privileging file established electronically in VetPro with any paper documents maintained … (2) Information

obtained, to be used in the credentialing process, must be primary source verified …

and documented in writing, either by letter, report of contact, or web verification.…"

33.     VHA Handbook 1100.19 further states that VA medical practitioners,

where required by the Drug Enforcement Agency to be certified by the DEA to

prescribe controlled substances, the VA must physically view the DEA certification

prior to appointment or reappointment.

34.     VHA Handbook 1100.19 further states when at the time of an initial

appointment or after a reappraisal, the VA must obtain and file in VetPro

information about any "involvement in administrative, professional or judicial

proceedings"; and information about any malpractice proceedings.

35.     VHA Handbook 1100.19 further states that at the time of any

reappointment, initial reappointment or transfer, the VA must check the National

Practitioner Data Bank regarding any information on the practitioner, and the VA

must monitor any information that calls into question the professional competence

or conduct of an individual, documenting efforts to obtain more information every

30 days until all necessary information is collected and determined.

36.     VHA Handbook 1100.19 further states that physician assistants must

be reappraised periodically, and the reappraisal process "must include: the

practitioner's statements regarding successful or pending challenges to any

licensure or registration; limitation, reduction or loss of privileges at another

hospital; loss of medical staff membership; pending malpractice claims or

malpractice claims closed since last reappraisal or initial appointment; mental and

physical status; and any other reasonable indicators of continuing qualification and competency."

37.    VA supervisory employees failed to perform actions required by VHA Handbook 1100.19.

38.    VHA Directive 1063 requires the VA supervising physician to randomly sample five patient encounters each quarter and engage in weekly management sessions with physician assistant.

39.    VA supervisory employees with oversight over Wisner failed to perform the required actions contained in VHA Directive 1063.

40.    Wisner's supervising physician was never instructed about the existence of VHA Directive 1063.

41.    VHA Directive 2012-030 required that Wisner be subjected to a screening by checking with the HIDPB database, which collects, among other facts, information regarding "health-care related criminal convictions."

42.    VA supervisory employees failed to perform the required actions contained in VHA Directive 2012-30, and all preceding regulations.

43.    Furthermore, VHA Directive 2004-029 required specific mandated acts of supervision, including:

   a.    The VA must prepare a "Scope of Practice" for each PA to "**ensure** that PAs practice medicine as agents of their supervising physician with defined levels of autonomy."

   b.    The Scope of Practice "**must** contain and address" the PA's routine duties, including performing "initial histories and physical examinations."

  c. "The chief of the clinical service, to which the PA is assigned, should **ensure** that clinical activities of PAs are monitored and evaluated. The Chief of Staff (COS) is responsible for seeing that such reviews are conducted and for assuring that clinical service chiefs take appropriate action to correct discovered deficiencies."

  d. "The COS, or the chief of the clinical service, **must** appoint a member of the regular physician staff to be the official supervisor (hereinafter designated as the "supervising physician) of each PA."

  e. "[I]t is **imperative** that the scope of each supervising physician's duties be clearly spelled out so that there is no ambiguity as to who is responsible for the action of the PA at any time or in any circumstance."

  f. "The effectiveness of the supervising physician in overseeing the work of the assigned PAs **must** be reflected in their proficiency reports."

  g. "Each supervising physician is responsible for the supervision of only those numbers of PAs, which the physician can effectively manage."

  h. "A PA **must not** function in a patient care role without a specifically designated supervising physician."

  i. "A structured review of the PA's performance by the supervising physician **must** be conducted every 2 years" and "**needs to include**" an overall assessment, results of "departmental/service monitoring and evaluation, drug utilization review, blood use evaluation, medical record review, or … any other objective quality improvement data available."

  j. "The chief of the clinical service, to which the PA is assigned, **needs to monitor** this review process and concur."

44. VA supervisory employees failed to perform the required actions contained in VHA Directive 2004-029, and all preceding regulations.

45. Despite regulatory mandates, Wisner's supervising physician was not reviewed by supervisors regarding how well he had been overseeing Wisner; he was never informed of the existence of VHA Directive 2004-029; he was never trained on

how to comply with VHA Directive 2004-029; the scope of his duties was never spelled out for him.

46.     Wisner's supervising physician was promoted by his supervisors within a year of Wisner's placement on administrative leave.

47.     The VA had additional policies in effect that included mandatory sexual assault reporting policies derived from VA regulation 38 C.F.R. § 1.201-1.204; A policy making the facility director responsible for "[e]nsuring sexual assault incidents are addressed in accordance with current VHA policy, and those identified greater than 72 hours after the assault, are handled in accordance with appropriate clinical standards of care." *See* VHA Directive 2012-026, p.5. The Leavenworth VA had a policy in effect stating, regarding patient abuse: "If abuse could possibly have been by a staff member, it should be reported on VAF 10-2633 Report of Special Incident Involving a Beneficiary and in any event if the abuse occurred on VA property, VA Police should be immediately notified." *See* 2010 Health System Policy Memorandum, p 5.

48.     VA supervisory employees failed to perform the required actions contained in VA regulation 38 C.F.R. § 1.201-1.20, describing when conduct that might be considered patient abuse must be reported to legal authorities, and VHA Directive 2012-026, requiring sexual assault cases to be handled "in accordance with appropriate clinical standards of care"; as well as a Leavenworth VAMC policy mandating reports of conduct that may constitute patient abuse at the hands of VA employees to the police.

49.    The VA has taken the medical position that all of Wisner's patients who reported inappropriate conduct were not sexual assault victims; therefore, none of the mandatory sexual assault follow-up has been performed pursuant to the foregoing policies.

50.    Defendant Wisner never once told Plaintiff that his exams, and medications, and questioning was improper, even though he knew they were improper, even though he possessed a duty to tell him as his patient, in order to conceal his tortious conduct from Plaintiff.

51.    Defendant Wisner further affirmatively represented that his procedures were for a medical purpose.

52.    Defendant Wisner, or the United States in his stead, should be equitably estopped from relying upon any statute of repose or limitations because he intentionally concealed his wrongdoing from Plaintiff.

53.    United States officials had actual knowledge that Wisner was committing widespread, large-scale malpractice upon its patients, and VA officials knew that Plaintiff had been one of those patients.

54.    Pursuant to 38 C.F.R. § 14.604(a), the VA is required to furnish to any person who inquires about filing a claim against the United States an SF-95 Form, and further, to advise the person to submit the form to the Regional Counsel having jurisdiction of the area where the occurrence took place.

55.    The purpose of this provision is to make sure that individuals know of the timing and filing requirements for claims against the VA.

56.     Despite having knowledge that Plaintiff had been the victim of the VA's negligence and Wisner's malpractice, the VA failed to fulfill its duty to advise Plaintiff of the requirement to file an SF-95 or to alert him in any way that he had potentially been subjected to unnecessary medical procedures and other malpractice, which Plaintiff was not aware.

57.     Once properly informed of his rights, the Plaintiff immediately sought to protect his interests by filing an SF-95. The U.S. should be equitably estopped from relying upon statutes of repose and limitations because its agents had a duty to inform him he had been subjected to Wisner's actions and to tell him how to file an SF-95.

58.     The Defendants have not been prejudiced in any way by the timing of Plaintiff's administrative claim.

59.     For these reasons, any statute of limitations or repose should be equitably tolled and/or equitably estopped.

60.     Defendant Wisner's VA supervisors and VA coworkers did not have discretion to not report Wisner to police or to remain idle in the face of Wisner's ongoing program of committing malpractice against Plaintiff and other veterans.

61.     The United States' acts were wanton and committed with reckless disregard for Plaintiff's wellbeing and with deliberately indifference to his Fourth, Fifth and Fourteenth Amendment rights to bodily integrity and privacy.

62.     Wisner's conduct at issue in this case was committed substantially with the intent of serving his employer's interest, i.e., provide medical care to

veterans, detect diseases and deformities, perform genitalia and rectal exams, prescribe medicine, visually inspect the veteran's body, elicit information about the veteran's sexual history and sexual performance, and to cultivate patient rapport.

63.     However, Wisner has admitted to the United States that at least part of his intent in performing portions of the genital and rectal exams, and eliciting patient history, and visually inspecting the veteran's body, was to satisfy his own curiosity and desire for thoroughness.

64.     Wisner's conduct occurred on the clock, in the exam room, during the course of repeated, full-body physical exams of Plaintiff, and during a time when both Plaintiff and Defendant Wisner were expecting medical care to occur.

65.     Wisner's tortious conduct constituted a small percentage of the overall physical exam Wisner provided to Plaintiff, and to the overall medical care Wisner provided Plaintiff.

66.     Wisner was hired to perform physical exams, prescribe medication, perform genitalia exams, perform rectal and prostate exams, and to make personal inquiries regarding his patients' sexual practices and history.

67.     The VA could expect Wisner to operate as an impaired practitioner from time-to-time, to perform improper physical exams from time-to-time, to repeat certain physicals too often, or to perform unnecessary exams.

68.     The VA did not put any chaperones in Mr. Wisner's exam room; nor did it supervise Mr. Wisner in an otherwise sufficient manner; therefore the VA granted

Mr. Wisner great freedom in how he went about providing medical exams in his exam room.

69.    As a result of Wisner's conduct, Plaintiff suffered extreme, long-lasting, medically significant emotional distress for which medical treatment is necessary, past and future medical damages, and past and future economic losses.

<u>COUNT I</u>
<u>NEGLIGENCE – MEDICAL MALPRACTICE</u>
<u>All Defendants</u>

70.    Plaintiff hereby incorporates by reference the allegations contained in the preceding Paragraphs as if fully restated herein.

71.    Defendant Wisner was a physician assistant for the VA, who, as part of his job duties, practiced and prescribed medicine, including performance of physical exams under the close supervision of a VA physician.

72.    Defendant's Wisner's scope of employment specifically included performing genitalia exams, rectal exams, asking probing questions about the veteran's sexual practices and history, and prescribing and providing medication to veterans.

73.    Defendant Wisner owed the Plaintiff the duty to use that degree of learning and skill ordinarily possessed and used by members of his profession and of that school of medicine in the community in which Defendant Wisner practiced medicine.

74.    Defendant USA owed Plaintiff an independent duty to exercise reasonable care as the Plaintiff's condition required.

75.     All Defendants owed Plaintiff the duty of using ordinary or reasonable care and diligence in providing him medical care.

76.     All Defendants violated their duties to Plaintiff when their medical treatment failed to meet the standard of care.

77.     Defendant Wisner violated the standard of care when he:

a.      conducted an improper and/or unnecessary examination of Plaintiff's genitalia.

b.      failed to recognize his own impairment and refer the Plaintiff to another practitioner.

c.      failed to wear gloves during the examination of Plaintiff's genitalia.

d.      used his position to elicit unnecessary private information from the Plaintiff.

78.     In addition, Defendant Wisner admitted failing to meet the standard of care for a physician assistant practicing in Kansas by:

a.      Repeatedly violating "The physician assistant licensure act …, by … making inappropriate sexual comments to his patients, overprescribing to his patients, and not meeting the appropriate standard of care"

b.      "Practicing as a physician assistant without reasonable skill and safety to his patients;"

c.      Failing "to keep written medical records that accurately described the services rendered to his patients;"

d.     Performing "unnecessary testicular and genital exams and performing unnecessary contact of his patients for no legitimate medical purpose;"

e.     Committing "repeated acts of professional incompetency on patients;"

f.     Failing "to adhere to the applicable standard of care to a degree that constitutes ordinary negligence when he repeatedly performed unnecessary genital and testicular examinations, overmedicated patients, and failed to wear gloves and did not refer patients as needed;" and

g.     "[E]ngaging in a pattern or practice or behavior" with his patients that "demonstrates a manifest incapacity or incompetence to perform professional services as a physician assistant when he repeatedly performed unnecessary genital and testicular examinations, overmedicated patients, failed to wear gloves and did not refer patients as needed."

79.   Defendant USA violated its standard of care when its employees:

a.     Failed to properly supervise Defendant Wisner.

b.     Failed to adequately investigate Defendant Wisner' background.

c.     Retained him in its employment.

d.     Failed to provide adequate and appropriate medical care.

e.     Failed to adhere to VHA Directive 1063, which mandates "appropriate clinical oversight, consultation, and patient care management" of a physician assistant employed by the VA; "[m]onitoring the PA's clinical

activities to ensure they are within their authorized Scope of Practice and are medically appropriate"; providing "timely notification to the Chief of Service of any deficiencies in relationship to the [physician assistant's] established Scope of Practice for corrective action"; "[p]roviding input into period assessments of the [physician assistant]…" and conducting "periodic monitoring of the [physician assistant's] clinical activities through a retrospective review of at least five randomly selected patient encounter notes each quarter to ensure the presence of ongoing competency and medical appropriateness."

      f.    Failed to follow mandatory supervisory actions under VHA Directives 2004-029, 2012-30, and all preceding regulations, and VHA Handbook 1100.19.

80.   Defendant Wisner's negligent acts were performed while he was on-the-clock, on the Defendant's premises, using the Defendant's equipment, while representing himself as the Defendant's employee; were occasioned by the Plaintiff seeking medical care; were performed amidst and in the context of the provision of medical services; were reasonably incidental to his employment; were within the scope of his employment; and Defendant USA is therefore vicariously liable for the tortious acts of Defendant Wisner.

81.   Defendant USA's employee supervisors in charge of Defendant Wisner were acting within their scope of employment when they failed to monitor and supervise Wisner appropriately.

17

82.    Defendants' conduct was wanton.

83.    The resulting harms suffered by the Plaintiff were foreseeable consequences of Defendants' negligence.

84.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered past, present and future shame, humiliation, medically significant emotional distress, loss of enjoyment of life, loss of sleep, and anger.

## COUNT II
## NEGLIGENT SUPERVISION, RETENTION AND HIRING
### Defendant United States of America

85.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

86.    Defendant Wisner was a physician assistant for the VA, who, as part of his job duties, practiced and prescribed medicine, including performance of physical exams, under the close supervision of a VA physician.

87.    Defendant USA owed Plaintiff the duty to exercise reasonable care to employ, supervise, control and retain a competent and careful physician assistant to:

      a.    Provide competent medical care to Plaintiff.

      b.    Perform work which involves a risk of physical harm unless it is skillfully and carefully done.

88.    Defendant USA further owed Plaintiff an independent duty to keep him safe while he was a patient in Defendant's care, while on Defendant's property, and while subject to the conduct of Defendant's employees.

89.    Defendant USA violated these duties when it failed to exercise reasonable care when it failed to supervise and decided to employ and continue to employ Defendant Wisner.

90.    Defendant USA violated these duties when its employees:

    a.    Failed to properly supervise Defendant Wisner.

    b.    Failed to adequately investigate his background.

    c.    Retained him in its employment.

    d.    Failed to provide adequate and appropriate medical care.

    e.    Failed to adhere to VHA Directive 1063, which mandates "appropriate clinical oversight, consultation, and patient care management" of a physician assistant employed by the VA; "[m]onitoring the PA's clinical activities to ensure they are within their authorized Scope of Practice and are medically appropriate"; providing "timely notification to the Chief of Service of any deficiencies in relationship to the [physician assistant's] established Scope of Practice for corrective action"; "[p]roviding input into period assessments of the [physician assistant]…" and conducting "periodic monitoring of the [physician assistant's] clinical activities through a retrospective review of at least five randomly selected patient encounter notes each quarter to ensure the presence of ongoing competency and medical appropriateness."

f.     Failed to follow mandatory supervisory actions under VHA Directives 2004-029, 2012-30, and all preceding regulations, and VHA Handbook 1100.19.

g.     Failed to follow mandatory rules for reporting employees suspected of patient abuse to authorities.

h.     Failed to implement and discipline whatsoever for known patient abuse.

i.     Failed to ask Wisner to stop negligently treating patients.

91.    Defendant USA knew or should have known that Mr. Wisner was unable to provide competent medical care to Plaintiff.

92.    Upon information and belief, the Defendant knew or reasonably should have known that:

a.     Defendant Wisner had victimized other veterans at the Leavenworth VAMC.

b.     Defendant Wisner was a danger to patients.

c.     Defendant Wisner was an impaired practitioner.

d.     Defendant Wisner had propensities to provide improper or unnecessary medical care.

e.     Defendant Wisner had propensities to violate patient boundaries.

f.     Defendant Wisner had a habit and practice of intruding upon the privacy and seclusion of patients.

20

g.   Defendant Wisner had propensities to inflict emotional distress.

h.   Defendant Wisner's supervising physicians had not been providing the requisite level of supervision and review of his activities, patient care and records.

93.   Defendant USA further had knowledge and reason to believe that Defendant Wisner's particular qualities and propensities to provide inadequate and inappropriate medical care, violate patient boundaries, and to act as an impaired practitioner presented an undue risk of harm to patients.

94.   Defendant USA knew or should have known that continued employment of Defendant Wisner would continue to expose patients, such as Plaintiff, to potential harm.

95.   Plaintiff's harms were within the risk created by Defendant Wisner's known propensities.

96.   Defendant USA possessed reason to believe that employment of Defendant Wisner would result in undue risk of harm to others.

97.   Defendant USA further knew or should have known that Defendant Wisner's conduct around patients such as Plaintiff required reasonable control and supervision.

98.   Defendant USA failed to provide adequate oversight and review of Defendant Wisner's performance of his job duties.

99.   Defendant USA further failed to adequately supervise and control Defendant Wisner given his known propensities toward harming patients.

100. The resulting harms suffered by the Plaintiff were foreseeable consequences of Defendant's negligence.

101. Defendant USA's conduct was wanton.

102. As a direct and proximate result of Defendant's negligence, Plaintiff suffered past, present and future shame, humiliation, medically significant emotional distress, lost enjoyment of life, loss of sleep, and anger, past and future lost income and medical bills.

## COUNT III
## BATTERY
## All Defendants

103. Plaintiff hereby incorporates by reference the allegations contained in the preceding Paragraphs as if fully restated herein.

104. Defendant Wisner, while operating in a medical context, within the scope of his job duties, committed a battery upon Plaintiff by offensive contact without any justification.

105. Defendant USA is vicariously liable for Defendant Wisner's conduct, as the USA is responsible for all intentional torts committed by its employees in the context of providing medical services to Plaintiff.

106. As a direct and proximate result of Defendants' negligence, Plaintiff suffered past, present and future shame, humiliation, medically significant emotional distress, lost enjoyment of life, loss of sleep, and anger, past and future lost income and medical bills.

## COUNT IV
## INVASION OF PRIVACY

## All Defendants

107.   Plaintiff hereby incorporates by reference the allegations contained in the preceding Paragraphs as if fully restated herein.

108.   Defendant Wisner, while acting within his scope of employment, intentionally interfered with Plaintiff's seclusion.

109.   Defendant Wisner, while acting within his scope of employment, pried into Plaintiff's personal affairs and concerns by asking him questions about his personal life, sexual activities and genitalia during a medical examination.

110.   Defendant Wisner further sought to and accomplished unnecessary viewing of Plaintiff's unclothed body.

111.   A reasonable person would be highly offended by Defendant Wisner's intrusive conduct.

112.   Defendant Wisner's intrusive conduct served the interest of his employer in that the information elicited and observed and the questions asked could have obtained medically relevant information.

113.   Defendant Wisner's intrusive conduct, however, was not medically necessary, was overly intrusive and improper.

114.   Defendant Wisner's intrusive conduct was outrageous and shocks the conscience.

115.   Defendant Wisner's conduct was wanton.

116.   As a direct result of Wisner's conduct, Plaintiff suffered a violation of privacy interest.

117.   Defendant USA is vicariously liable for Defendant Wisner's conduct, as the USA is responsible for all intentional torts committed by its employees in the context of providing medical services to Plaintiff.

118.   As a direct and proximate result of Defendants' negligence, Plaintiff suffered past, present and future shame, humiliation, medically significant emotional distress, lost enjoyment of life, loss of sleep, and anger, past and future lost income and medical bills.

WHEREFORE, Plaintiff prays for a judgment against the Defendants in an amount that is fair and reasonable for actual and compensatory damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, for interest at the highest lawful rate, and for equitable relief, and for such other relief as the Court deems just and prior.

Respectfully submitted,

/s/Dan Curry
Daniel G. Curry, KS #22750
Sarah A. Brown, KS #12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9695 (fax)
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFF

## DESIGNATION OF PLACE OF TRIAL

Comes Now, Plaintiff, and hereby designates Kansas City, KS, as the place of trial.

Respectfully submitted,

/s/Dan Curry
Daniel G. Curry, KS #22750
Sarah A. Brown, KS #12130
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9695 (fax)
dan@brownandcurry.com
sarah@brownandcurry.com
ATTORNEYS FOR PLAINTIFF